No. 20-3229

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

ORLANDO CORDIA HALL,

*Petitioner-Appellant,*

*-v-*

T.J. WATSON, in his official capacity as Complex Warden of U.S.P. Federal Correctional Complex (FCC) Terre Haute,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:20-CV-00599-JPH-DLP

Death Penalty Case
Execution Date: November 19, 2020

## MOTION OF NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC. FOR LEAVE TO SUBMIT *AMICUS CURIAE* BRIEF

SHERRILYN A. IFILL
  *President and Director-Counsel*
SAMUEL SPITAL
KEVIN E. JASON
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC
40 Rector Street, 5th floor
New York, NY 10006
(212) 965-2200
sspital@naacpldf.org
*Counsel of Record*

JIN HEE LEE*
ANUJA D. THATTE
MAHOGANE D. REED
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC.
700 14th Street NW
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org

*Counsel for Amicus Curiae NAACP Legal Defense & Educational Fund, Inc.*

November 18, 2020

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

ORLANDO CORDIA HALL,

*Petitioner-Appellant,*

*-v-*

T.J. WATSON, in his official capacity as Complex Warden of U.S.P. Federal Correctional Complex (FCC) Terre Haute,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:20-CV-00599-JPH-DLP

Death Penalty Case
Execution Date: November 19, 2020

## MOTION OF NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC. FOR LEAVE TO SUBMIT *AMICUS CURIAE* BRIEF

Pursuant to Rule 29 of the Federal Rules of Appellate Procedure, Seventh Circuit Rule 29, and this Court's inherent authority, amicus curiae NAACP Legal Defense and Educational Fund, Inc. ("LDF"), respectfully moves this Court for leave to file the attached brief in support of Petitioner Orlando Hall's Emergency Motion for Stay of Execution Pending Appeal, filed November 18, 2020.

### INTERESTS OF AMICUS CURIAE

The NAACP Legal Defense & Educational Fund, Inc. ("LDF") is the nation's first and foremost civil rights law organization. Through litigation, advocacy, public

education, and outreach, LDF strives to secure equal justice under the law for all Americans and to break down barriers that prevent African Americans from realizing their basic civil and human rights.

LDF has long been concerned about the persistent and pernicious influence of race on the administration of the criminal justice system in general, and on jury selection in particular. We have represented defendants in *Swain v. Alabama*, 380 U.S. 202 (1965), *Alexander v. Louisiana*, 405 U.S. 625 (1972), and *Ham v. South Carolina*, 409 U.S. 524 (1973); pioneered the affirmative use of civil actions to end jury discrimination, *Carter v. Jury Commission of Greene County*, 396 U.S. 320 (1970), *Turner v. Fouche*, 396 U.S. 346 (1970); and appeared as amicus curiae in myriad jury discrimination cases, including *Batson v. Kentucky*, 476 U.S. 79 (1986), *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991), *Georgia v. McCollum*, 505 U.S. 42 (1992), *Miller-El v. Cockrel*, 537 U.S. 322 (2003), *Johnson v. California*, 545 U.S. 162 (2005), *Miller-El v. Dretke*, 545 U.S. 231 (2005), and *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019).

## RELEVANCE OF AMICUS CURIAE BRIEF

Orlando Cordia Hall was sentenced to death by an all-white jury in 1996 after federal prosecutors used peremptory strikes to remove four of five Black prospective jurors from the jury panel. After his sentence became final, and after his amended federal habeas petition under 28 U.S.C. § 2255 ("§ 2255") was denied, Mr. Hall's attorneys learned of substantial evidence supporting claims that: (a) the prosecution's reasons for striking the four Black prospective jurors from Mr. Hall's venire were

racially motivated in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986); and (b) the imposition of the federal death penalty, particularly in Texas, is impermissibly influenced by race in violation of the Fifth and Eighth Amendments to the United States Constitution. (*See* Hall's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, *Hall v. T.J. Watson*, 20 Civ. 599 (S.D. Ind. Nov. 12, 2020) (Dkt. No. 1) ("Hall Pet.") at 1–3, 9–14.) Mr. Hall now seeks to vindicate these substantial claims by seeking habeas relief under 28 U.S.C. § 2241 ("§ 2241").

LDF's brief argues that Mr. Hall's important constitutional claims can only proceed under § 2241, which provides a remedy where other means of challenging confinement, *i.e.*, § 2255, are unavailable. This Court has recognized that claims under § 2241 may be cognizable where denying the petition would result in a fundamental "miscarriage of justice." *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). That is the case here.

LDF also argues that claims that racial discrimination has infected a death sentence are different in kind than other constitutional harms. "Defendants are harmed, of course, when racial discrimination in jury selection compromises the right of trial by impartial jury." *Miller-El v. Dretke*, 545 U.S. 231, 237 (2005) (internal citations omitted). But, as the Supreme Court stressed in another capital case involving such discrimination, the harm is not limited to the defendant. "[R]acial minorities are harmed more generally, for prosecutors drawing racial lines in picking juries establish 'state-sponsored group stereotypes rooted in, and reflective of, historical prejudice.'" *Id.* at 237–38 (internal citation omitted). And, more broadly,

there is a serious injury to the rule of law itself: "the very integrity of the courts is jeopardized when a prosecutor's discrimination invites cynicism respecting the jury's neutrality." *Id.* at 237 (internal citations omitted). Similarly, where a petitioner presents evidence that an entire system of capital sentencing is tainted by racial discrimination, the harm extends beyond the defendant by establishing state-sponsored prejudices that undermine the rule of law.

In light of these unique harms, the Supreme Court has emphasized the need to "engage[] in 'unceasing efforts' to eradicate racial prejudice from our criminal justice system." *McCleskey v. Kemp*, 481 U.S. 279, 309 (1987) (internal citation omitted). Of particular significance here, the Government's ordinary interest in finality should not be accorded the same weight when the petitioner raises a substantial claim that his sentence of death is tainted by racial discrimination. As the Supreme Court recently explained, the "the State's interest in finality deserves little weight" when a petitioner demonstrates (even years after the denial of an initial habeas petition) that his death sentence was affected by such discrimination, because states "lack an interest in enforcing a capital sentence obtained on so flawed a basis." *Buck v. Davis*, 137 S. Ct. 759, 779 (2017). The United States here similarly lacks an interest in enforcing a death sentence obtained based on racial discrimination, and it would be a miscarriage of justice for Mr. Hall to be executed without any court considering the significant evidence he has presented that his death sentence was "obtained on so flawed a basis." *Id.*

Mr. Hall's habeas petition implicates the odious effects of race discrimination

in both the jury selection and capital punishment contexts, and LDF argues that this Court should allow his claims to proceed. Amicus respectfully urges this Court to stay Mr. Hall's execution so that his claims of race discrimination may be adjudicated.

The Federal Rules of Appellate Procedure and the Seventh Circuit's Rules and I.O.P.s do not expressly address the submission of an amicus curiae brief with respect to motions. However, consistent with court's inherent authority, circuit courts have routinely accepted amicus briefs filed in support of or in opposition to a party's stay request or in connection with similar motions. *See, e.g., In re Abbott,* 800 F. App'x 296 (5th Cir. 2020) (reflecting filing of an amicus brief in connection with a mandamus petition and temporary stay request); *Fed. Trade Comm. v. Qualcomm Inc.,* Nos. 19-15159, 19-16122, Dkt. 43 (9th Cir. July 23, 2020) (accepting amicus curiae briefs submitted in support of or opposing the appellant's motion for partial stay of a preliminary injunction pending appeal); *Washington, et al. v. Donald J. Trump, et al.,* No. 17-35105, Dkt. 77 (9th Cir. Feb. 6, 2017) (accepting amicus briefs concerning defendant's motion to stay district court order); *David Floyd, et al. v. City of New York*, No. 13-3088, Dkt. 159, 160 (2d Cir. Oct. 10, 2013) (granting non-parties' motion to file amicus brief opposing motion to stay pending appeal); *Brooks v. Estelle*, 697 F.2d 586, 588 (5th Cir. 1982) (reflecting that amicus filed a brief and presented argument in connection with an application filed in the Fifth Circuit for a stay of execution); *Selfridge v. Carey*, 660 F.2d 516, 516 (2d Cir. 1981) ("Upon consideration of the briefs submitted by counsel and by amici curiae and after hearing oral argument, the motion of defendants-appellants for a stay of the preliminary

injunction entered by the District Court is denied."). Moreover, LDF is submitting its amicus brief within the timeframe set in the Federal Rules of Appellate Procedure and the Circuit Rules of the United States Court of Appeals for the Seventh Circuit. *See* Fed. R. App. P. 29(a)(6) ("An amicus curiae must file its brief . . . no later than 7 days after the principal brief of the party being supported.").

Accordingly, LDF respectfully requests that this Court grant leave to file the accompanying amicus curiae brief.

Dated: November 18, 2020

Respectfully submitted,

/s/ *Jin Hee Lee*

SHERRILYN A. IFILL
  *President and Director-Counsel*
SAM SPITAL
KEVIN E. JASON
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
sspital@naacpldf.org

JIN HEE LEE*
ANUJA D. THATTE
MAHOGANE D. REED
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC.
700 14th Street NW
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org
*\*Counsel of Record*

*Counsel for* Amicus Curiae *NAACP Legal Defense & Educational Fund, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2020, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 18, 2020

Respectfully submitted,

*/s/ Jin Hee Lee*

JIN HEE LEE
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC.
700 14th Street NW
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org

*Counsel for Amicus Curiae NAACP*
*Legal Defense & Educational Fund, Inc.*

No. 20-3229

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

ORLANDO CORDIA HALL,

*Petitioner-Appellant,*

*-v-*

T.J. WATSON, in his official capacity as Complex Warden of U.S.P. Federal Correctional Complex (FCC) Terre Haute,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:20-CV-00599-JPH-DLP

Death Penalty Case
Execution Date: November 19, 2020

## BRIEF OF *AMICUS CURIAE* NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC. IN SUPPORT OF PETITIONER-APPELLANT

SHERRILYN A. IFILL
  *President and Director-Counsel*
SAMUEL SPITAL
KEVIN E. JASON
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC
40 Rector Street, 5th floor
New York, NY 10006
(212) 965-2200
sspital@naacpldf.org
*Counsel of Record*

JIN HEE LEE*
ANUJA D. THATTE
MAHOGANE D. REED
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC.
700 14th Street NW
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org

*Counsel for Amicus Curiae NAACP
Legal Defense & Educational Fund, Inc.*

November 18, 2020

**Save As**   **Clear Form**

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 20-3229

Short Caption: Orlando Cordia Hall v. TJ Watson

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    NAACP Legal Defense & Educational Fund, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    N/A

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b)   Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Jin Hee Lee        Date:  11/18/20

Attorney's Printed Name:  Jin Hee Lee

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑  **No** ☐

Address:  NAACP Legal Defense & Educational Fund, Inc.

    700 14th Street N.W., Suite 600, Washington, DC 20005

Phone Number: (202) 682-1300        Fax Number:  (202) 682-1312

E Mail Address: jlee@naacpldf.org

rev. 12/19 AK

# TABLE OF CONTENTS

INTERESTS OF AMICUS CURIAE ............................................................ 1

INTRODUCTION .................................................................................... 2

ARGUMENT .......................................................................................... 4

I. Mr. Hall's Claims Are Entitled to Review Under the § 2241
Safety Valve. .................................................................................... 4

II. When a Habeas Petitioner Presents Previously Unavailable Evidence
that His Death Sentence Was Influenced by Racial Discrimination, No
Procedural Requirement Should Prevent a Merits Review of the
Claims and a Stay of Execution. ........................................................ 6

CONCLUSION ...................................................................................... 16

CERTIFICATE OF RULE 32 COMPLIANCE ........................................ 17

CERTIFICATE OF SERVICE ................................................................ 18

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Louisiana,*
405 U.S. 625 (1972) .........................................................................1

*Batson v. Kentucky,*
476 U.S. 79 (1986) ....................................................................... 1, 2

*Boumediene v. Bush,*
553 U.S. 723 (2008) .........................................................................8

*Bowen v. Johnston,*
306 U.S. 19 (1939) .........................................................................14

*Brown v. Rios,*
696 F.3d 638 (7th Cir. 2012) ......................................................2, 5

*Buck v. Davis,*
137 S. Ct. 759 (2017) ........................................................... *passim*

*Carter v. Jury Commission of Greene County,*
396 U.S. 320 (1970) .........................................................................1

*Coleman v. Thompson,*
501 U.S. 722 (1991) .......................................................................10

*Edmonson v. Leesville Concrete Co.,*
500 U.S. 614 (1991) .........................................................................1

*Flowers v. Mississippi,*
139 S. Ct. 2228 (2019) ................................................................1, 13

*Furman v. Georgia,*
408 U.S. 238 (1972) .......................................................................14

*Georgia v. McCollum,*
505 U.S. 42 (1992) ...........................................................................1

*Graham v. Collins,*
506 U.S. 461 (1993) .......................................................................14

*Ham v. South Carolina,*
409 U.S. 524 (1973) .........................................................................1

*Harris v. Nelson,*
394 U.S. 286 (1969) ...................................................................8

*Holland v. Florida,*
560 U.S. 631 (2010) ...............................................................7, 8

*House v. Bell,*
547 U.S. 518 (2006) .............................................................10, 11

*Johnson v. California,*
545 U.S. 162 (2005) ...................................................................1

*Martinez v. Ryan,*
566 U.S. 1 (2012) .........................................................................9

*McCleskey v. Kemp,*
481 U.S. 279 (1987) ...................................................................3

*McQuiggin v. Perkins,*
569 U.S. 383 (2013) .................................................................10

*Miller-El v. Cockrel,*
537 U.S. 322 (2003) ...................................................................1

*Miller-El v. Dretke,*
545 U.S. 231 (2005) .........................................................1, 3, 13

*Murray v. Carrier,*
477 U.S. 478 (1986) .............................................................10, 14

*Powers v. Ohio,*
499 U.S. 400 (1991) .................................................................13

*Sawyer v. Whitley,*
505 U.S. 333 (1992) .................................................................11

*Schlup v. Delo*
513 U.S. 298 (1995) .........................................................5, 7, 11

*Swain v. Alabama,*
380 U.S. 202 (1965) ...................................................................1

*Teague v. Lane,*
489 U.S. 288 (1989) ...................................................................7

*Turner v. Fouche,*
396 U.S. 346 (1970) ...................................................................1

*Turner v. Murray,*
476 U.S. 28 (1986) .............................................................. 14

*Wainwright v. Sykes,*
433 U.S. 72 (1977) ........................................................... 7, 9

*Webster v. Daniels,*
784 F.3d 1123 (7th Cir. 2015) .......................................... 5, 7

## Statutes

28 U.S.C. § 2241 ....................................................... *passim*

28 U.S.C. § 2255 ......................................................... 2, 5, 13

## Other Authority

Carrie Leonetti, *Smoking Guns: The Supreme Court's Willingness
to Lower Procedural Barriers to Merits Review in Cases Involving
Egregious Racial Bias in the Criminal Justice System,* 101 Marq. L.
Rev. 205, 212 (2017) ........................................................ 11

# INTERESTS OF *AMICUS CURIAE*[1]

The NAACP Legal Defense & Educational Fund, Inc. ("LDF") is the nation's first and foremost civil rights law organization. Through litigation, advocacy, public education, and outreach, LDF strives to secure equal justice under the law for all Americans and to break down barriers that prevent African Americans from realizing their basic civil and human rights.

LDF has long been concerned about the persistent and pernicious influence of race on the administration of the criminal justice system in general, and on jury selection in particular. We have represented defendants in *Swain v. Alabama*, 380 U.S. 202 (1965), *Alexander v. Louisiana*, 405 U.S. 625 (1972), and *Ham v. South Carolina*, 409 U.S. 524 (1973); pioneered the affirmative use of civil actions to end jury discrimination, *Carter v. Jury Commission of Greene County*, 396 U.S. 320 (1970), *Turner v. Fouche*, 396 U.S. 346 (1970); and appeared as amicus curiae in myriad jury discrimination cases, including *Batson v. Kentucky*, 476 U.S. 79 (1986), *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991), *Georgia v. McCollum*, 505 U.S. 42 (1992), *Miller-El v. Cockrel*, 537 U.S. 322 (2003), *Johnson v. California*, 545 U.S. 162 (2005), *Miller-El v. Dretke*, 545 U.S. 231 (2005), and *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019).

---

[1] *Amicus curiae* states that no party's counsel authored this brief either in whole or in part, and further, that no party or party's counsel, or person or entity other than *amicus curiae*, *amicus curiae*'s members, and their counsel, contributed money intended to fund preparing or submitting this brief.

Orlando Cordia Hall was sentenced to death by an all-white jury in 1996 after federal prosecutors used peremptory strikes to remove four of five Black prospective jurors from the jury panel. After his sentence became final, and after his amended federal habeas petition under 28 U.S.C. § 2255 ("§ 2255") was denied, Mr. Hall's attorneys learned of substantial evidence supporting claims that: (a) the prosecution's reasons for striking the four Black prospective jurors from Mr. Hall's venire were racially motivated in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986); and (b) the imposition of the federal death penalty, particularly in Texas, is impermissibly influenced by race in violation of the Fifth and Eighth Amendments to the United States Constitution. (*See* Hall's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, *Hall v. T.J. Watson*, 20 Civ. 599 (S.D. Ind. Nov. 12, 2020) (Dkt. No. 1) ("Hall Pet.") at 1–3, 9–14.) Mr. Hall now seeks to vindicate these substantial claims by seeking habeas relief under 28 U.S.C. § 2241 ("§ 2241"). This Court should permit Mr. Hall to pursue his challenges and stay his execution.

These important constitutional claims can only proceed under § 2241, which provides a remedy where other means of challenging confinement, *i.e.*, § 2255, are unavailable. This Court has recognized that claims under § 2241 may be cognizable where to deny the petition would result in a fundamental "miscarriage of justice." *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). It would be a fundamental miscarriage of justice for the United States to carry out an execution without providing courts an opportunity to consider and resolve the merits of Mr. Hall's substantial claims that his death sentence is unlawfully tainted by racial

discrimination.

Claims that racial discrimination has infected a death sentence are different in kind than other constitutional harms. "Defendants are harmed, of course, when racial discrimination in jury selection compromises the right of trial by impartial jury." *Miller-El v. Dretke*, 545 U.S. 231, 237 (2005) (internal citations omitted). But, as the Supreme Court stressed in another capital case involving such discrimination, the harm is not limited to the defendant. "[R]acial minorities are harmed more generally, for prosecutors drawing racial lines in picking juries establish 'state-sponsored group stereotypes rooted in, and reflective of, historical prejudice.'" *Id.* at 237–38 (internal citation omitted). And, more broadly, there is a serious injury to the rule of law itself: "the very integrity of the courts is jeopardized when a prosecutor's discrimination invites cynicism respecting the jury's neutrality." *Id.* at 238 (internal citations omitted). Similarly, where a petitioner presents evidence that an entire system of capital sentencing is tainted by racial discrimination, the harm extends beyond the defendant by establishing state-sponsored prejudices and undermining the rule of law.

In light of these unique harms, the Supreme Court has emphasized the need to "engage[] in 'unceasing efforts' to eradicate racial prejudice from our criminal justice system." *McCleskey v. Kemp*, 481 U.S. 279, 309 (1987) (internal citation omitted). Of particular significance here, the Government's ordinary interest in finality should not be accorded the same weight when the petitioner raises a substantial claim that his sentence of death is tainted by racial discrimination. As

the Supreme Court recently explained, the "the State's interest in finality deserves little weight" when a petitioner demonstrates (even years after the denial of an initial habeas petition) that his death sentence was affected by such discrimination, because states "lack an interest in enforcing a capital sentence obtained on so flawed a basis." *Buck v. Davis*, 137 S. Ct. 759, 779 (2017). The United States here similarly lacks an interest in enforcing a death sentence obtained based on racial discrimination, and it would be a miscarriage of justice for Mr. Hall to be executed without any court considering the significant evidence he has presented that his death sentence was "obtained on so flawed a basis." *Id.*

Mr. Hall's habeas petition implicates the odious effects of race discrimination in both the jury selection and capital punishment contexts, and this Court should allow his claims to proceed. Amicus respectfully urges this Court to stay Mr. Hall's execution so that his claims of race discrimination may be adjudicated.

## ARGUMENT

### I.   Mr. Hall's Claims Are Entitled to Review Under the § 2241 Safety Valve.

In opposing Mr. Hall's request for relief under § 2241, the Government seeks to deny any review of Mr. Hall's substantial claims of racial discrimination and instead proceed with an execution that raises grave constitutional concerns. In particular, the Government argues that Mr. Hall's claims should be shielded from review because they were not brought earlier. (*See* Government's Response to Hall's 28 U.S.C. § 2241 Petition and Response in Opposition to Hall's Mot. For Stay, *Hall v. T.J. Watson*, 20 Civ. 599 (S.D. Ind. Nov. 16, 2020) (Dkt. No. 12) at 10–17.) But in so arguing, the Government ignores both (a) the fact that Mr. Hall's claims arise out of

evidence that became available only after Mr. Hall's § 2255 proceedings had concluded, and (b) the role of § 2241 in preventing the kind of fundamental miscarriage of justice that would occur if the United States, in 2020, carried out an execution where the petitioner's death sentence was influenced by racial discrimination.

As this Court has confirmed, § 2241 provides a critical safety valve for ensuring the reviewability of claims based on new evidence of an unconstitutional sentence that, as here, was not available at the § 2255 stage. *See, e.g., Webster v. Daniels*, 784 F.3d 1123, 1139 (7th Cir. 2015) (observing that "there is no reason to assume that our procedural system is powerless to act in such a case"). This is consistent with the tenet that "habeas corpus is, at its core, an equitable remedy" to correct fundamentally unjust sentences. *Schlup v. Delo*, 513 U.S. 298, 319 (1995); *see Webster*, 784 F.3d at 1139 ("[A] core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence."). As such, in determining whether claims are reviewable under § 2241, this Court has recognized that an important consideration is whether denying review of the petitioner's claim would result in "a miscarriage of justice." *Brown,* 696 F.3d at 640.

As discussed below, it would be such a fundamental "miscarriage of justice" for the United States to carry out an execution before courts have the opportunity to consider the merits of substantial claims that the petitioner's death sentence was tainted by racial discrimination, such as those raised in this proceeding.

## II. When a Habeas Petitioner Presents Previously Unavailable Evidence that His Death Sentence Was Influenced by Racial Discrimination, No Procedural Requirement Should Prevent a Merits Review of the Claims and a Stay of Execution.

The Court should review the merits of Mr. Hall's petition because claims involving racial discrimination in the meting of a capital punishment implicate the miscarriage-of-justice principles that have long been recognized as shaping the core of the habeas corpus remedy. Such claims are fundamentally different in kind than other constitutional claims and impose harms extending beyond a particular defendant. Indeed, racial discrimination in capital cases impose unique harms on society as a whole and to the rule of law itself.

Accordingly, courts have recognized the unique nature of race in the context of capital cases and have relaxed procedural requirements where serious substantive allegations of racial discrimination exist. For example, in *Buck v. Davis*, the Supreme Court reopened the judgment because the petitioner presented evidence that he was sentenced to death in part because he is Black. 137 S. Ct. 759 (2017). In *Buck*, defense counsel had presented an "expert" who testified before the jury that because Mr. Buck is Black, he posed a greater risk of committing future acts of criminal violence. *Id.* at 768–69. The introduction of this "powerful racial stereotype—that of black men as violence prone"—was "odious in all aspects." *Id.* at 776 (quotation marks and citation omitted); *id.* at 778. The real possibility that Mr. Buck was sentenced to death, at least in part, because he is Black injured not only Mr. Buck, but also public confidence in the criminal justice system. *See id.* As a result, Mr. Buck's case was "extraordinary" and reopening the judgment was appropriate—even though Mr.

Buck's habeas petition, and a prior motion to reopen the judgment, had both been denied years earlier. *Id.* at 777.

Just as fundamental principles of equity required merits review of Mr. Buck's claim that his death sentence had been tainted by racial discrimination, those principles require the court to consider the merits of Mr. Hall's substantial claims that his death sentence was influenced by such discrimination.

Because "habeas corpus is, at its core, an equitable remedy," *Schlup*, 513 U.S. at 319, "equitable principles have traditionally governed the substantive law of habeas corpus." *Holland v. Florida*, 560 U.S. 631, 646 (2010) (citation and internal quotation marks omitted). In cases involving habeas challenges to state judgments, these equitable principles include federalism, comity, and the state's interest in finality. The anti-retroactivity doctrine set forth in *Teague v. Lane*, 489 U.S. 288 (1989), and the procedural default doctrine established in *Wainwright v. Sykes*, 433 U.S. 72 (1977), promote these principles. These doctrines help maintain the balance of federalism and ensure the "state trial on the merits [is] the 'main event,'" *Wainwright*, 433 U.S. at 90, by limiting the circumstances under which habeas courts may grant relief based on federal claims that were not properly presented to the state court or that did not exist at the time of the petitioner's trial or direct appeal.

But the interests in comity and federalism are inapplicable where a petitioner was prosecuted by the federal government. As this Court has explained, "the comity concerns that exist with respect to state-court proceedings are not present for federal prosecutions." *Webster*, 784 F.3d at 1138. And, of course, a federal court's interests

in respecting federalism are not implicated when a petitioner seeks habeas relief from a federal court and challenges a federal prosecution. Thus, it is only the government's interest in finality that is implicated in post-conviction challenges to federal sentences.

That interest is important, but it is not absolute. Courts have long recognized that the habeas writ must "be administered with the initiative and flexibility essential to insure that miscarriages of justices within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969). "Habeas is not 'a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose.'" *Boumediene v. Bush*, 553 U.S. 723, 780 (2008) (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). Consistent with its common-law roots, the Great Writ is "adaptable," providing a remedy as needed to correct fundamentally unjust convictions or sentences. *See id.* at 779; *see also Harris*, 394 U.S. at 291 (noting the "scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts and lawmakers"). These equitable principles continue to inform the exercise of the writ even after the passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Holland*, 560 U.S. at 646.

As a result, even in cases concerning prosecutions by a state, neither comity nor finality can be absolute bars to habeas review, and courts must take other considerations into account in appropriate cases when deciding whether to review a

habeas petitioner's claims on the merits.  In the procedural default context, the Court has recognized two circumstances in which a federal habeas court must excuse noncompliance with a state procedural rule to consider the merits of a federal claim: when there is cause and prejudice for the default, or when enforcing the default would result in a fundamental miscarriage of justice.  The principles underlying the latter exception make clear that no procedural obstacle should prevent a habeas court from reaching the merits when a habeas petitioner presents compelling evidence that his death sentence was influenced by racial discrimination.

First, a petitioner can overcome a procedural bar by establishing cause for the default and prejudice. *See, e.g.*, *Wainwright*, 433 U.S. at 87. For example, in *Martinez v. Ryan*, the Court held that a petitioner may establish cause to excuse a procedural default "when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding." 566 U.S. 1, 14 (2012). This Court said the rule announced in *Martinez* was necessary as "an equitable matter," *id.*, to protect the "bedrock principle" that any person haled into court is provided "effective assistance of counsel," *id.* at 12. When a federal court finds cause and prejudice, it is not granting relief; rather, the court is allowing consideration of "the merits of a claim that otherwise would have been procedurally defaulted." *Id.* at 17. In allowing petitioner an opportunity to be heard on the merits of the claim, the Court acknowledged the importance of the underlying claim in the equitable administration of justice.

Second, a petitioner can overcome a procedural bar when necessary to correct

a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As this Court explained in *Murray v. Carrier*, "'in appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" 477 U.S. 478, 495 (1986) (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)) (alteration omitted). "In an effort to 'balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case,' the Court has recognized a miscarriage-of-justice exception." *House v. Bell*, 547 U.S. 518, 536 (2006) (quoting *Schlup*, 513 U.S. at 324).

Thus, in determining whether Mr. Hall should have an opportunity to litigate the merits of his substantial racial discrimination claims, this Court must consider whether allowing his execution to proceed with a consideration of those claims would result in a miscarriage of justice. This analysis is particularly important because this case involves a federal sentence of death, where there is no countervailing interest in federalism or comity and no other judicial forum where Mr. Hall can present his claims. *See generally McQuiggin v. Perkins*, 569 U.S. 383, 394 (2013) (holding that the miscarriage of justice exception applicable to state procedural defaults was similarly applicable to a petitioner's failure to comply with AEDPA's one-year statute of limitation, and stressing that "[i]t would be passing strange to interpret a statute seeking to promote federalism and comity as requiring stricter enforcement of federal procedural rules than procedural rules established and enforced by the States") (alteration omitted).

Thus far, the Supreme Court has applied the "miscarriage of justice" exception in cases involving strong evidence that a prisoner is actually innocent of the underlying offense, *see House*, 547 U.S. at 536–37; *Schlup*, 513 U.S. at 315–16, 327, or compelling evidence that he is "actually innocent" of the death penalty—meaning that, in light of the new evidence, no reasonable juror would have found the petitioner eligible for the death penalty under state law. *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).

But, while the incarceration or execution of an innocent person are prototypical examples of "fundamentally unjust" results, they are not the only examples. Indeed, one scholar recently noted that the Supreme Court "has repeatedly demonstrated a belief that concerns involving racial animus outweigh the concerns like finality and efficiency that underlie most procedural barriers." Carrie Leonetti, *Smoking Guns: The Supreme Court's Willingness to Lower Procedural Barriers to Merits Review in Cases Involving Egregious Racial Bias in the Criminal Justice System*, 101 Marq. L. Rev. 205, 212 (2017).

Allowing an execution to proceed even though a defendant has presented significant evidence that his death sentence was influenced by racial discrimination would be a "miscarriage of justice." That is true from the perspectives of the defendant, the public, and the rule of law. As the Supreme Court explained recently, the possibility that a defendant has been sentenced to death because of his race represents "a disturbing departure from a basic premise of our criminal justice system: Our law punishes people for what they do, not who they are." *Buck*, 137 S.

Ct. at 778. "Dispensing punishment on the basis of an immutable characteristic flatly contravenes this guiding principle." *Id.*

And as the Court elaborated in *Buck*, this "departure from basic principle" that our law does not punish people for immutable characteristics is even more profound when that immutable characteristic is race. *Id.* "'Discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice.'" *Id.* (quoting *Rose v. Mitchell*, 443 U.S. 545, 555 (1979)). "Relying on race to impose a criminal sanction 'poisons public confidence' in the judicial process. It thus injures not just the defendant, but 'the law as an institution, the community at large, and the democratic ideal reflected in the processes of our courts.'" *Id.* (alteration omitted) (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015), and *Rose*, 443 U.S. at 556).

These principles apply with special force when an individual identifies racial animus in the capital context. In such cases, the state's—or here, the United States'—ordinary interest in "finality deserves little weight," because the state "lack[s] an interest in enforcing a capital sentence obtained on so flawed a basis." *Id.* at 779.

Here, Mr. Hall has presented substantial claims of racial discrimination in both the selection of the all-white jury that condemned him to death, and in the administration of the federal capital system altogether. (*See* Hall Pet. at 1–3, 9–14.) Those claims implicate the same kinds of unique harms that were at issue in *Buck*.

The Supreme Court has recognized that "blanket discretion to peremptorily strike prospective jurors for any reason can clash with the dictates of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution."

*Flowers v. Mississippi*, 139 S. Ct. 2228, 2238 (2019). "The Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Id.* at 2243. Racially injurious practices in jury selection must be ferreted out because when the prosecution's choice of jurors is tainted with racial bias, that "overt wrong . . . casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial . . . ." *Powers v. Ohio*, 499 U.S. 400, 412 (1991). "By taking steps to eradicate racial discrimination from the jury selection process, *Batson* sought to protect the rights of defendants and jurors, and to enhance public confidence in the fairness of the criminal justice system."[2] *Flowers*, 139 S. Ct. at 2242. Further, "the very integrity of the courts is jeopardized" when the government's racial animus "'invites cynicism respecting the jury's neutrality' . . . and undermines public confidence in adjudication." *Miller-El*, 545 U.S. at 238 (quoting *Georgia v. McCollum*, 505 U.S. 42, 49 (1992)).

In his § 2241 petition, Mr. Hall has also presented evidence, unavailable for his § 2255 petition, demonstrating that the application of the federal death penalty in Texas between 1988 and 2010 was disproportionately meted-out on the basis of race. (*See* Hall Pet. at 3, 13–14.) The analysis discussed in Mr. Hall's petition shows that federal prosecutors in Texas requested the death penalty against Black defendants at a rate six times greater than for non-Black defendants, that federal authorities authorized pursuing a death sentence against Black defendants at a rate

---

[2] Despite taking these steps, legal scholars and members of the Supreme Court have catalogued reams of evidence that "the discriminatory use of peremptory challenges remains a problem." *Miller-El*, 545 U.S. at 238 (Breyer, J., concurring); *see id.* at 267–69 (collecting studies and evidence regarding persistence of discriminatory peremptory strikes).

nearly eight times greater than for non-Black defendants, and that a verdict of death was rendered against Black defendants at a rate nearly sixteen times greater than for non-Black defendants. (*See id.* at 13–14.)

This evidence likewise warrants full merits consideration, as it would be a miscarriage of justice for the United States to carry out an execution based on a death sentence influenced by such discrimination. The Supreme Court has previously observed that "[i]t would seem to be incontestable that the death penalty inflicted on one defendant is 'unusual' if it discriminates against him by reason of his race, religion, wealth, social position, or class." *Furman v. Georgia*, 408 U.S. 238, 242 (1972) (Douglas, J., concurring); *accord Graham v. Collins*, 506 U.S. 461, 484 (1993) (Thomas, J., concurring) (describing "the specter of racial prejudice" as "the paradigmatic capricious and irrational sentencing factor"). The risk of racial prejudice infecting a capital sentencing proceeding is especially serious in light of the complete finality of the death sentence. *Turner v. Murray*, 476 U.S. 28, 35 (1986).

In sum, procedural rules must not be "so inflexible that [they] may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939). Evidence that racial animus played any role in a capital trial and selection of the death penalty creates precisely the kind of "fundamentally unjust" result that the writ of habeas corpus is designed to prevent. *Murray*, 477 U.S. at 495. Nor can interests in finality justify denying Mr. Hall's request for a stay. When, as here, there is compelling evidence that racial discrimination influenced a petitioner's death sentence, that

sentence is fundamentally unjust, and the government's ordinary "interest in finality [deserves] little weight." *Buck*, 137 S. Ct. at 779. Federal habeas courts must therefore be permitted to reach the merits of a petitioner's claims.

This Court should therefore hold that the § 2241 safety valve is available when, as here, a petitioner facing execution by the United States has presented compelling evidence that his sentence of death is tainted by racism.

## CONCLUSION

The Court should direct the entry of a stay of execution, so that Mr. Hall is not put to death without any court considering the merits of his substantial claims that his sentence was the product of racial discrimination.

Dated: November 18, 2020

Respectfully submitted,

/s/ Jin Hee Lee

SHERRILYN A. IFILL
  *President and Director-Counsel*
SAM SPITAL
KEVIN E. JASON
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
sspital@naacpldf.org

JIN HEE LEE*
ANUJA D. THATTE
MAHOGANE D. REED
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC.
700 14th Street NW
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org
*Counsel of Record*

*Counsel for* Amicus Curiae *NAACP Legal Defense & Educational Fund, Inc.*

## CERTIFICATE OF RULE 32 COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29 and 32(g)(1) and Circuit Rules of the United States Court of Appeals for the Seventh Circuit 29 and 32(c), I hereby certify that this brief complies with the stated type-volume limitations. The text of the brief was prepared in Century 12-point font, with footnotes in Century 11-point font. This brief consists of 3,716 words, excluding those items noted in Federal Rule of Appellate Procedure 32(f). This certification is based on the word count function of the Microsoft Office Word processing software, which was used in preparing this brief.

Dated: November 18, 2020

*/s/ Jin Hee Lee*

JIN HEE LEE
NAACP LEGAL DEFENSE &
 EDUCATIONAL FUND, INC.
700 14th Street NW
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org

# CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2020, I caused a true and correct copy of

the foregoing to be electronically filed with the Clerk of the Court of the United States

Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that

all participants in the case are registered CM/ECF users and that service will be

accomplished by the CM/ECF system.

Dated: November 18, 2020

/s/ Jin Hee Lee

JIN HEE LEE
NAACP LEGAL DEFENSE &
 EDUCATIONAL FUND, INC.
700 14th Street NW
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org